# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# ELKINS

**AMERICAN SELECT INSURANCE COMPANY, et al.,**

    Plaintiffs,

v.                                                                        **Civil Action No. 2:11-CV-49**
                                                                        **(BAILEY)**

**ALLEGHENY INSURANCE SERVICES, INC.,**
**and JAMES WALLACE,**

    Defendants.

**and**

**ALLEGHENY INSURANCE SERVICES, INC.,**

    Defendant/Third-Party Plaintiff,

v.

**M. SCOTT JOHNSON and**
**JEREMY STANLEY,**

    Third-Party Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before this Court are plaintiffs American Select Insurance Company's, Westfield Insurance Company's, Westfield National Insurance Company's, and Ohio Farmers Insurance Company's (collectively, "Westfield") Motion to Dismiss Counterclaims [Doc. 58] and third-party defendant M. Scott Johnson's Motion to Dismiss Third-Party Complaint [Doc. 60], filed December 9, 2011, and December 15, 2011, respectively. These motions have since been fully briefed and are ripe for decision. Having reviewed the record and the arguments of the parties, this Court concludes that Westfield's motion should be

1

**GRANTED IN PART** and **DENIED IN PART** and Johnson's motion should be **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

### I. Factual History

The first-party action arises out of the termination of an agency agreement between Westfield, an insurance group, and Allegheny Insurance Services, Inc. ("Allegheny"), an insurance agency. On January 1, 2010, Westfield and Allegheny entered into the most recent Westfield Insurance Agency Agreement ("Agency Agreement") whereby Allegheny agreed to provide various services to customers purchasing insurance policies issued by Westfield. ([Doc. 3] at ¶ 9). In exchange, Westfield agreed to pay Allegheny a commission on the premiums paid by policyholders. (Id. at ¶ 10). Westfield could terminate the agreement without cause after providing "written notice mailed or delivered to [Allegheny] . . . not less than one-hundred eighty (180) days in advance of the effective termination date . . . ." (Id. at ¶¶ 11, 12).

During the months after executing the Agency Agreement, Westfield became increasingly concerned about the ability of Allegheny to meet its obligations under the agreement. (Id. at ¶ 13). By letter dated October 19, 2010, Westfield informed Allegheny that their continued business relationship would depend upon Allegheny committing to make several changes in the operation of its business. (Id. at ¶ 14). After Allegheny refused, Westfield informed Allegheny of its intention to terminate the Agency Agreement by letter dated November 23, 2010. (Id. at ¶ 15).

On December 1, 2010, Westfield and Allegheny began to discuss the terms of a limited agency agreement, which would allow Allegheny to continue providing limited

services to certain existing Westfield policyholders until the termination date of January 1, 2012. (Id. at ¶¶ 17, 18). On December 10, 2010, Westfield provided Allegheny with formal written notice that the Agency Agreement would be terminated as of January 1, 2012. (Id. at ¶ 19). Along with the termination letter, Westfield provided Allegheny with a proposed Limited Agency Agreement. (Id. at ¶ 21). Among other things, the proposed Limited Agency Agreement: (1) terminated the Agency Agreement effective January 1, 2012; (2) empowered Allegheny to issue endorsements on policies in force, provided that such endorsements would not increase Westfield's liability or extend the term of any policy; (3) permitted Allegheny to retain commissions from premiums collected at the same rates provide for in the Agency Agreement; and (4) required Allegheny to refund to Westfield unearned commissions from any cancelled or otherwise terminated policies. ([Doc. 3-3] at 2).

In response, Allegheny sent a letter to Westfield dated January 26, 2011, demanding that Westfield revise the Limited Agency Agreement to include terms which Westfield claims are substantially different than discussed on December 1, 2010. ([Doc. 3] at ¶ 23). Specifically, Allegheny asserted that Westfield had agreed to allow it to continue receiving commissions until June 30, 2012, instead of January 1, 2012. ([Doc. 3-4] at 2). In addition, Allegheny complained that the Limited Agency Agreement failed to include provisions: (1) requiring Westfield to honor Allegheny's ownership of expirations, (2) prohibiting Westfield from appointing any new agents to service Allegheny's territories until July 2013, and (3) precluding Westfield from accepting any broker of record letters for Allegheny's expirations until July 2013. (Id.).

On February 9, 2011, Allegheny sent another letter to Westfield accusing the insurance group of disclosing information to third parties regarding the expiration dates for policies issued by Westfield and brokered by Allegheny. ([Doc. 3] at ¶ 25). Westfield responded by letter dated February 28, 2011. (Id. at ¶ 27). In particular, Westfield explained that it did not engage in the conduct alleged by Allegheny and again offered the terms of the Limited Agency Agreement, which Westfield claimed comported with the parties' discussions on December 1, 2010. (Id. at ¶ 29).

During this time, Westfield learned that Allegheny had made misrepresentations to Westfield policyholders in order to persuade those policyholders to purchase insurance policies from other insurance providers. (Id. at ¶ 30). According to Westfield, Allegheny falsely informed Westfield policyholders, including but not limited to Beckley Steel, Inc. ("Beckley Steel") and Virginia Steel & Fabrication, Inc. ("Virginia Steel"), that Westfield would no longer be doing business in West Virginia. (Id. at ¶ 31).

On June 14, 2011, Westfield received a letter of representation from the law firm of Colombo & Stuhr, P.L.L.C., which included a number of allegations and demands on behalf of Allegheny. (Id. at ¶ 32). First, the letter alleged that Westfield had breached the Agency Agreement by attempting to "poach existing clients/customers of [Allegheny] by improper use of the expirations." ([Doc. 3-7] at 3). In particular, the letter outlined two instances where a Westfield agent allegedly made unsolicited contact with an Allegheny client and Westfield insured in an attempt to obtain a broker of record letter. (Id. at 4). In so doing, the Westfield agent allegedly used information gained from the underwriting department at Westfield. (Id.). Based upon these allegations, the letter demanded that Westfield take corrective action. (Id. at 5). Next, the letter demanded that Westfield revise the Limited

Agency Agreement to include terms similar to those outlined in Allegheny's January 26, 2011, letter. (Id.).

Finally, the letter warned of an impending lawsuit should Westfield not agree to Allegheny's demands. (Id. at 6). Specifically, the lettered stated that "in 14 days, a lawsuit will be filed against Westfield Insurance Company in the Circuit Court of Randolph County, West Virginia, with individual counts that will include breach of contract for the failure of Westfield to honor the terms of the Westfield Insurance Agency Agreement ('WIAA') between [Allegheny] and Westfield, misappropriation of trade secrets, unjust enrichment, disgorgement of profits, etc. Other individuals (including at least two Westfield agents doing business in West Virginia) that have conspired with Westfield in this endeavor will also be named as defendants in this action, on theories including tortious interference and civil conspiracy." (Id. at 1). According to the letter, the filing of the lawsuit would "result in a substantial amount of very tedious discovery (including electronic discovery) . . .." (Id. at 6).

## II. Procedural History

### A. Westfield's Claims against Allegheny

On June 24, 2011, Westfield filed suit in this Court against Allegheny, claiming tortious interference with its business relations and requesting declaratory relief [Doc. 3]. In Count I, Westfield requests the following 10 declarations:

> (1) Westfield did not breach any contract with [Allegheny] or otherwise fail to honor the terms of the Agency Agreement;
>
> (2) Westfield did not misappropriate any trade secrets of [Allegheny] in connection with the Agency Agreement . . . or the termination [thereof];
>
> (3) Westfield did not engage in any civil conspiracy with other entities or

5

individuals against [Allegheny];

(4) Westfield did not derive any unjust enrichment in connection with the Agency Agreement with [Allegheny] or the termination [thereof];

(5) Westfield did not unlawfully interfere with any contracts, business relationships, or prospective business relationships between [Allegheny] and any other individual or entity at any time during its business relationship with [Allegheny];

(6) Westfield did not engage in any other tortious or unlawful conduct and did not act in bad faith at any time during its business relationship with [Allegheny];

(7) Westfield lawfully terminated the Agency Agreement, and the effective termination date for the Agency Agreement is January 1, 2012;

(8) The Limited Agency Agreement . . . is the controlling agreement as to the terms of the limited agency relationship between [Allegheny] and Westfield until the termination of the relationship on January 1, 2012;

(9) Westfield may appoint insurance agents other than [Allegheny] to sell insurance policies issued by Westfield and to provide services to individuals and business holding policies issued by Westfield in the territories currently and previously serviced by [Allegheny]; [and]

(10) Westfield may lawfully send Informational Letter No. 39, as required by the West Virginia Insurance Commission, to individuals, businesses, or other entities affected by the termination of the relationship between Westfield and [Allegheny], which termination is effective as of January 1, 2012[.]

(Id. at 7-9).

In Count II, Westfield alleges that Allegheny tortiously interfered with its business relations by falsely informing Westfield policyholders, including but not limited to Beckley Steel and Virginia Steel, that Westfield would no longer issue or renew insurance policies in West Virginia. (Id. at ¶ 45). According to Westfield, these actions were intentionally and willfully taken to convince those policyholders to purchase insurance issued by other insurance providers so that Allegheny could receive commissions after the termination of

6

its agency relationship with Westfield. (Id. at ¶¶ 46-51). As relief, Westfield requests that this Court "award compensatory and punitive damages in excess of $75,000, court costs, attorneys fees, and such further relief as this Court deems necessary or appropriate under the circumstances." (Id. at 10).

After filing its Answer [Doc. 12] on July 18, 2011, Allegheny instituted a state court action against the Westfield insurance group and Westfield agents M. Scott Johnson and Jeremy Stanley in the Circuit Court of Randolph County, West Virginia, on August 1, 2011 [Doc. 30-2]. As warned in the June 14, 2011, letter, the state court complaint alleges that: (1) Westfield breached the Agency Agreement by using Allegheny's policy expirations to solicit a broker of record letter from at least two Allegheny clients, (2) Westfield's agents tortiously interfered with Allegheny's contractual right to exclusive use and ownership of its policy expirations, and (3) Westfield breached its December 1, 2010, agreement with Allegheny by failing to honor the terms promised to be included in the Limited Agency Agreement. (Id. at 7-13). In addition, the state court complaint seeks an award of punitive damages against all defendants, a permanent injunction enjoining all defendants from any further conduct that violates Allegheny's contractual rights to the exclusive use of its policy expirations, and a temporary injunction prohibiting the defendants from issuing an Informational Letter No. 39 to Westfield policyholders that are also clients of Allegheny until resolution of the parties' dispute concerning the Agency Agreement and the Limited Agency Agreement. (Id. at 14-15).

On August 12, 2011, Allegheny moved to dismiss Westfield's Complaint, arguing in part that this Court should abstain from exercising its jurisdiction to grant the declaratory relief requested in Count I in light of the state court action [Doc. 23]. Finding abstention

unwarranted, this Court denied Allegheny's motion to dismiss on September 22, 2011 [Doc. 39].

On October 31, 2011, Westfield moved to amend its Complaint to assert additional claims against Allegheny based upon facts discovered since the filing of its Complaint [Doc. 45]. This Court granted leave on November 3, 2011 [Doc. 46], and Westfield filed its Amended Complaint [Doc. 47] on November 7, 2011.

### B. Allegheny's Counterclaims against Westfield

On November 18, 2011, Allegheny answered Westfield's Amended Complaint and asserted the following six counterclaims against Westfield: (1) breach of the Agency Agreement based on Westfield's alleged provision of Allegheny expirations to Johnson and Stanley; (2) breach of contract based on Westfield's failure to honor the purported terms of an alleged oral agreement reached during phone conversion on December 1, 2010 (the "Oral Limited Agency Agreement"); (3) breach of the Agency Agreement based on alleged Westfield's provision of Allegheny expirations to Westfield's legal counsel; (4) a request for declaratory relief based on Westfield's alleged breaches of contract, (5) a request for punitive damages alleging, willful, wanton, intentional, and deliberate acts by Westfield in connection with its alleged breach of the Agency Agreement by disclosing Allegheny expirations; and (6) a request for injunctive relief to require Westfield to act in accordance with the Agency Agreement and the Oral Limited Agency Agreement [Doc. 49].

On December 9, 2011, Westfield filed the instant Motion to Dismiss Counterclaims [Doc. 58], arguing that Allegheny has failed to state claims upon which relief can be granted. First, Westfield contends that the statute of frauds bars any breach of contract claim based upon the Oral Limited Agency Agreement. Second, Westfield asserts that

8

Allegheny has failed to state a claim for breach of the Agency Agreement because Allegheny does not explicitly allege that the information Westfield provided Johnson and Stanley was protected expiration information and because Westfield's legal counsel are not insurance agents or brokers, nor were they provided expiration information for marketing purposes. Finally, Westfield argues that Allegheny's claims for punitive damages, declaratory relief, and injunctive relief should be dismissed to the extent that they are entirely predicated on Allegheny's inadequately-stated breach of contract claims.

On December 21, 2011, Allegheny responded in opposition to Westfield's motion [Doc. 62]. First, Allegheny argues that the statute of frauds does not bar its claim for breach of the Oral Limited Agency Agreement because the Agency Agreement provides that upon the termination of the Agency Agreement, the terms of a limited agency agreement shall apply. Second, Allegheny contends that it has adequately stated a breach of the Agency Agreement because the context of its allegations shows that Allegheny asserts Westfield provided Johnson and Stanley with protected expirations and because disclosure of expirations to Westfield's legal counsel for any reason is prohibited by the Agency Agreement.

On January 3, 2012, Westfield replied in support of its motion, reasserting and supplementing its previous arguments [Doc. 66]. For example, Westfield counters that the Agency Agreement does not constitute a writing sufficient to remove the Oral Limited Agency Agreement from the statute of frauds.

### C. Allegheny's Third-Party Claims against Johnson and Stanley

On November 21, 2011, Allegheny moved for leave to file third-party claims against Johnson and Stanley [Doc. 51] for tortious interference with contractual relations, punitive

damages, and injunctive relief. This Court granted leave on November 23, 2011 [Doc. 52], and Allegheny filed its Third-Party Complaint [Doc. 53] on November 28, 2011. As relevant here, Allegheny alleges that Johnson used Allegheny expirations provided by Westfield to solicit Elkins Distributing Company, Inc., ("Elkins Distributing") to change its Westfield broker of record from Allegheny to West Virginia Insurance Agency. ([Doc. 53] at ¶ 15). Though Elkins Distributing refused the solicitation and retained Allegheny as its broker of record, Allegheny alleges that it was "forced to devote time and attention of the company to reverse the potential loss of Elkins Distributing" and that it "sustained consequential damages and incurred attorney's fees, costs and expenses associated with . . . Johnson's conduct, and potentially other damages as well." (Id. at ¶ 20).

On December 15, 2011, Johnson filed the instant Motion to Dismiss Third-Party Complaint [Doc. 60], arguing that Allegheny has failed to state a claim against him upon which relief can be granted. First, Johnson contends that his communication with Elkins Distributing constituted legitimate competition. Second, Johnson asserts that Allegheny was not harmed because Elkins Distributing retained Allegheny as its broker of record and thus that Allegheny has no recoverable damages.

On December 23, 2011, Allegheny responded in opposition to Johnson's motion [Doc. 64]. First, Allegheny argues that legitimate competition is an affirmative defense that should not be considered at the motion to dismiss stage. Second, Allegheny argues that Johnson's communication with Elkins Distributing caused it actionable harm in two ways, namely: (1) Elkins Distributing contacted Allegheny about Johnson's activity, which forced Allegheny to devote time and resources to protect its property rights in the expiration related to Elkins Distributing and (2) Johnson's conduct required Allegheny to seek an

injunction in this action to enjoin any further interference.

On December 28, 2011, Johnson replied in support of its motion, reasserting and supplementing its previous arguments [Doc. 65]. For example, Johnson argues that Allegheny's alleged damages are too speculative to support a claim for intentional interference with a contract.

## DISCUSSION

### I. Applicable Standard

A 12(b)(6) motion must be treated as a motion for summary judgment under Federal Rule of Civil Procedure 56(c) where "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). In this regard, the Fourth Circuit has held that a court ruling on a motion to dismiss may consider any documents integral to and relied on in the complaint – regardless of whether those documents are actually attached to the Complaint. See **Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.**, 367 F.3d 212, 234 (4th Cir. 2004). In reaching its decision below, this Court has accordingly considered the Agency Agreement, which is integral to and relied on in Allegheny's counterclaims and third-party claims without converting the motion into one for summary judgment.

In assessing a Rule 12(b)(6) motion for failure to state a claim, the court must accept the factual allegations contained in the complaint as true. **Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp.**, 910 F.2d 139, 143 (4th Cir. 1990). A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is *plausible* on its face." **Bell Atl. Corp. v. Twombly**, 127 S. Ct. 1955, 1974 (2007) (emphasis added).

"A complaint need only give 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" **In re Mills**, 287 Fed.Appx. 273, 280 (4th Cir. 2008)

(quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Id.* (internal quotations and citations omitted). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancements." ***Ashcroft v. Iqbal***, 556 U.S. 662, 883-884 (2009).

## II. Analysis

### A. Westfield's Motion to Dismiss

Westfield moves to dismiss Allegheny's counterclaims for failure to state a claim upon which relief can be granted. Westfield provides support for dismissal of each count, while Allegheny contends that each count should proceed. Below, the Court will consider each count beginning with Allegheny's claims for breach of contract.

#### 1. Oral Limited Agency Agreement

The statute of frauds in West Virginia provides, in pertinent part, that:

> No action shall be brought . . . [u]pon any agreement that is not to be performed within a year, [u]nless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged or his agent.

W.Va. Code § 55-1-1.

Allegheny alleges that on December 1, 2010, Westfield agreed upon an Oral Limited Agency Agreement containing the following terms:

a. Allegheny . . . would continue to receive commissions on Westfield policies covering Allegheny . . . clients pursuant to the . . . Agency Agreement up through and including June 30, 2012;
b. The effective date of termination of the . . . Agency Agreement would be June 30, 2012;
c. Westfield would not appoint any new agents to service the territories of Allegheny . . . until July 2013;
d. Westfield would not accept any broker of record letters for the expirations of Allegheny . . . through June 30, 2012; and
e. Westfield would not send the notices to Allegheny . . . clients that are based on Informational Letter No. 39 as required by the West Virginia Insurance Commission, until the effective date of the termination date of June 30, 2012.

([Doc. 49] at ¶ 6).

Allegheny does not, and cannot, dispute that none of the above terms can be performed within a year and thus that the statute of frauds is applicable. Instead, Allegheny argues that the Agency Agreement constitutes a sufficient writing because it provides that "[i]n the event the Agency Agreement is terminated, the terms of [Westfield's] Limited Agency Agreement shall apply." (Agency Agreement at Part I, Section I). This Court disagrees.

Nearly 130 years ago, the Supreme Court of Appeals of West Virginia first pronounced that "[e]very agreement required by the statute of frauds to be in writing must be certain in itself or capable of being made so by reference to something else, whereby the terms can be ascertained with reasonable certainty." Syl. Pt. 2, *White v. Core*, 20 W.Va. 272 (1882). In 1997, the Supreme Court of Appeals explained that "[b]y 'certain in

itself' we mean that within its four corners the writing must contain or refer to the basic terms of the agreement . . .." ***Fry Racing Enterprises, Inc. v. Chapman***, 201 W.Va. 391, 497 S.E.2d 541 (1997).

Here, the Agency Agreement's single fleeting reference to a limited agency agreement clearly falls woefully short of describing an agreement that is "certain in itself," failing to describe even one term of the limited agency agreement. Thus, because the statute of frauds is undisputably applicable and Allegheny has failed to allege the existence of a writing sufficient to satisfy the statute of frauds, Allegheny's breach of contract claim based upon the Oral Limited Agency Agreement (Count II) is hereby **DISMISSED**. Accordingly, Allegheny's requests for declaratory relief (Count IV) and injunctive relief (Count VI) that are wholly dependent upon the viability of that claim are also hereby **DISMISSED**.

### 2. Agency Agreement

Part III, Section D of the Agency Agreement provides that "[Westfield] shall protect the security of [Allegheny's] information in the same manner it protects its own confidential and proprietary information."

Part IV, Section A states, as relevant here that "[Allegheny's] records and use and control of expirations shall remain [Allegheny's] absolute property and be left in [Allegheny's] undisputed possession . . .."

Part IV, Section C provides in whole that "[a]s long as use and control of such expirations are vested in [Allegheny], [Westfield] shall not use its records of those expirations, or any information about the customer which [Westfield] acquires in the normal course of business dealings between [Westfield] and [Allegheny] under this Agreement, in

any marketing method for the sale, service or renewal of any ownership, use and control, nor shall [Westfield] communicate such expiration information or work product to any other agent or broker except as otherwise provided for in this Agreement."

The Agency Agreement does not define "expiration information." On the issue of expiration information, Allegheny alleges: "The term 'expirations' refers to a list of policies issued and the expiration dates of the policies. It includes vital information regarding the elements of the insurance contracts in force, such as records containing the date of the insurance policy, the name of the insured, the date of its expiration, the amount of insurance, premiums, property covered and the terms of insurance. The expirations enable an agent to contact the insured before the existing contract of insurance expires. The expirations provide the agent with information necessary to secure another policy and present to the client a solution for the insured's insurance needs." ([Doc. 49] at ¶ 10).

      i.      **Johnson and Stanley**

Allegheny alleges that Westfield breached the above-outlined provisions of the Agency Agreement "by providing information" to Johnson and Stanley about Westfield insureds for which Allegheny is the broker of record. ([Doc. 49] at ¶¶ 17-21). Allegheny also alleges that "[t]o the extent that . . . Westfield . . . breached the . . . Agency Agreement by improperly disclosing information about [Allegheny] expirations to . . . Johnson . . . Stanley, [Allegheny] has sustained damages from the consequences of each breach and risks the loss of the prospective business of other clients of Allegheny . . . that are presently Westfield insureds." (Id. at ¶ 22).

Westfield argues that Allegheny has failed to state a breach of contract claim because Allegheny does not specifically and unequivocally allege that the information

15

Westfield allegedly provided Johnson and Stanley was the expiration information protected by the Agency Agreement. Allegheny responds that the context of its allegations establishes that the "information" referenced was "expiration information."

Viewing Allegheny's allegations in their most favorable light, this Court agrees with Allegheny that it has sufficiently alleged that Westfield's disclosure of Allegheny's expiration information to Johnson and Stanley breached the Agency Agreement. Thus, Allegheny's breach of contract claim relating to Johnson and Stanley (Count I) **MAY PROCEED**. Accordingly, Allegheny's requests for declaratory relief (Count IV), punitive damages (Count V), and injunctive relief (Count VI) that are predicated upon that claim also **MAY PROCEED**.

### ii. Westfield's Legal Counsel

Allegheny alleges that Westfield also breached the above-outlined provisions of the Agency Agreement by disclosing expiration information to its legal counsel who then telephoned Allegheny clients and former Westfield policyholders to inquire about any prior communications had between those clients and Allegheny about Westfield. ([Doc. 49] at ¶¶ 32-36).

Westfield argues that Allegheny has failed to state a breach of contract claim because Allegheny has failed to allege that such disclosure was made so that Westfield's counsel could contact former Westfield policyholders for marketing purposes, as described in Part IV, Section C of the Agency Agreement. In response, Allegheny refines its theory to assert that "*any* disclosure by Westfield to its counsel of a 'list' or the identity of any individual of Allegheny clients that were former Westfield policyholders is a violation of the terms of the . . . Agency Agreement," including those outlined above. ([Doc. 62] at 9)

(emphasis in original).

Even viewing Allegheny's allegations in their most favorable light, this Court agrees with Westfield that Allegheny has failed to state a claim for breach of the Agency Agreement. Specifically, this Court agrees that Westfield's alleged disclosure of expiration information to its legal counsel does not violate the Agency Agreement in the absence of allegations that its counsel are insurance agents or brokers or that the expirations were used "in any marketing method for the sale, service or renewal of any form of insurance coverage or other product . . . ," as required by Part IV, Section C of the Agency Agreement. Thus, Allegheny's breach of contract claim relating to Westfield's legal counsel (Count III) is hereby **DISMISSED**. Accordingly, Allegheny's requests for declaratory relief (Count IV), punitive damages (Count V), and injunctive relief (Count VI) that are wholly dependent upon the viability of that claim are also hereby **DISMISSED**.

### B. Johnson's Motion to Dismiss

Johnson moves to dismiss Allegheny's third-party claims against him for failure to state a claim upon which relief can be granted. Johnson provides support for dismissal of each count, while Allegheny contends that each count should proceed. Below, the Court will consider each count beginning with Allegheny's claim for intentional tortious interference with contractual relations.

#### 1. Intentional Tortious Interference with Contractual Relations

"To establish prima facie proof of tortious interference, a plaintiff must show: (1) existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages." Syl. Pt. 2, ***Torbett v.***

***Wheeling Dollar Savings & Trust Co.***, 173 W.Va. 210, 314 S.E.2d 166 (1983).

Johnson argues that Allegheny has failed to adequately plead the elements of harm and recoverable damages because Allegheny concedes that Elkins Distributing retained Allegheny as its broker of record despite Johnson's solicitation. Allegheny claims that it was harmed by Johnson's solicitation in two ways: (1) Elkins Distributing contacted Allegheny about Johnson's activity, which forced Allegheny to devote time and resources to protect its property rights in the expiration related to Elkins Distributing and (2) Johnson's conduct has required Allegheny to seek an injunction to enjoin any further interference. For the reasons that follow, this Court finds neither of these alleged harms sufficient to support Allegheny's tortious interference claim as a matter of law.

This Court is unconvinced that a plaintiff can state a tortious interference claim based upon an unsuccessful solicitation, i.e., when the solicited party to the contract elects to continue performance in the face of solicitation. This conclusion finds support in Restatement (Second) of Torts, upon which the Supreme Court of Appeals of West Virginia relied heavily to articulate the contours of a tortious interference cause of action in ***Torbett***. 314 S.E. 2d at 171-173. Restatement (Second) of Torts § 766 explains that:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise *causing the third person not to perform the contract*, is subject to liability to the other for the pecuniary loss to the other *from the failure of the third person to <u>perform</u> the contract*.

(Emphasis added). The emphasized language makes clear that the only harm an intentional interference claim is intended to redress is the solicited party's failure to perform

its contractual obligations and that the only damages recoverable are those resulting from that failure to perform. In addition, Allegheny has failed to point to a case, and this Court's independent research has been unable to find a single one, in which the Supreme Court of Appeals recognized a tortious interference claim where the interference did not cause a failure to perform the contract at issue.

This Court is similarly unpersuaded that Allegheny can recover its attorney's fees and costs for seeking an injunction in this action enjoining Johnson from further contact with Westfield insureds for which Allegheny is the broker of record. Though the Restatement provides that consequential damages are recoverable in a tortious interference cause of action, see § 774A(1)(b), that type of damages is nevertheless limited to damages incurred as a consequence of the solicited party's failure to perform. As for attorney's fees and costs specifically, those types of damages are recoverable only if incurred to pursue a separate breach of contract claim against the successfully solicited and breaching party. See § 774A, cmt. c (citing ***Dassance v. Nienhuis***, 57 Mich. App. 422, 225 N.W.2d 789 (1975)).

Accordingly, because Allegheny has failed to adequately allege the elements of harm and recoverable damages, its tortious interference claim against Johnson (Count I) is hereby **DISMISSED**.

### 2. Punitive Damages

In light of this Court's dismissal of Allegheny's tortious interference claim against Johnson, Allegheny's claim for punitive damages against Johnson must also fail. Accordingly, Allegheny's claim for punitive damages (Count III) is hereby **DISMISSED** to the extent that it seeks punitive damages against Johnson.

### 3. Injunctive Relief

Finally, Allegheny seeks an injunction enjoining Johnson from using expirations protected by the Agency Agreement to contact any additional Westfield insureds for which Allegheny is the broker of record. To the extent that this Court has allowed Allegheny's breach of contract claim to proceed based upon Westfield's alleged provision of Allegheny expirations to Johnson, this Court finds it appropriate to allow Allegheny's request for injunction relief against Johnson (Count IV) to **PROCEED**.

### **CONCLUSION**

For the foregoing reasons, this Court concludes that plaintiff Westfield's Motion to Dismiss Counterclaims **[Doc. 58]** should be, and hereby is, **GRANTED IN PART** and **DENIED IN PART**. Accordingly, Count II, Count III, Count IV (in part), Count V (in part), and Count VI (in part) of Allegheny's Counterclaims **[Doc. 49]** are hereby **DISMISSED**, while Count I, Count IV (in part), Count V (in part), and Count VI (in part) **MAY PROCEED**. In addition, this Court concludes that third-party defendant Johnson's Motion to Dismiss Third-Party Complaint **[Doc. 60]** should be, and hereby is **GRANTED IN PART** and **DENIED IN PART**. Accordingly, Count I and Count III (in part) of Allegheny's Third-Party Complaint **[Doc. 53]** are hereby **DISMISSED**, while Count IV **MAY PROCEED**.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record herein.

**DATED:** April 2, 2012.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE